[No. 4587.]

## JOHN J. CLARKE v. ANNIE RANSOM.

PROOF THAT AN INSTRUMENT IS TESTAMENTARY.—Parol testimony will be received for the purpose of showing whether an instrument propounded as a will, which is not upon its face testamentary in its character, is such; and if it appears from the surrounding circumstances that the instrument was intended to be testamentary, the Court will give effect to the intention, and in such case the particular form of the instrument is immaterial.

IDEM.—Under the foregoing rule, the following instrument held to be testamentary in its character and admitted to probate: "Dear old Nance: I wish to give you my watch, two shawls, and also five thousand dollars. Your old friend, E. A. Gordon."

ALTERING A WILL.—It is not necessary that a second will, altering a former one, should state in terms that it is intended thereby to alter such former will.

APPEAL from the Probate Court, County of Santa Clara.

Mrs. Elizabeth A. Gordon, a resident of the county of Santa Clara, on the 6th day of December, 1874, made a will, in which, after making several small bequests, she

devised the residue of her estate, valued at about $170,000, in equal proportions, to her brother, John J. Clarke, and to trustees to hold for the use of her daughter Helen. On the 30th day of April following, she made a codicil, in which it was recited that as her daughter had died, she bequeathed the whole estate, aside from the small bequests, to her said brother. Her brother and John T. Doyle were nominated executors. Neither the will nor codicil were olographic. Among the bequests was one of one thousand dollars to Annie Ransom. On the 23d of June, 1874, Mrs. Matilda A. Ransom and her daughter Annie went from San Jose to Mayfield Grange, where Mrs. Gordon resided, to visit her. They were old friends of Mrs. Gordon's, and had heard that she would not survive many days. Mrs. Gordon had been accustomed to call the daughter "Nance" and "Old Nance." She told them, when they arrived, that she had not long to live. When they were about to go down from the chamber to lunch, Mrs. Gordon requested the mother to let the daughter remain with her. While they were alone, Mrs. Gordon wrote and gave to the daughter the following:

"MAYFIELD GRANGE, Tuesday, June 23, 1874.

"DEAR OLD NANCE: I wish to give you my watch, two shawls, and also five thousand dollars.

"Your old friend,
"E. A. GORDON."

Mrs. Gordon died on the 3d day of July, 1874. One of the executors, John T. Doyle, presented the will and codicil for probate on the 1st day of August, 1874. On the 12th of the same month, Annie Ransom presented for probate the above instrument. Clarke, the residuary legatee, moved to dismiss her petition, because the instrument was not testamentary in its character, and because it was not an alteration of the prior will and codicil. The court denied the motion. Clarke then contested the probating of the instrument, because it was not intended to be a will by the deceased, and because the testatrix was not of sound or

disposing mind when it was made. On the trial, a large amount of parol testimony was received to show from the declarations of the testatrix, and from the surrounding circumstances, that it was intended to be testamentary. The court admitted it to probate along with the first will and codicil. The contestant appealed from so much of the judgment as admitted to probate the instrument propounded by Annie Ransom.

The other facts are stated in the opinion.

*Archer & Lovell,* for the Appellant.

The paper in question is not testamentary in form or character, and is not susceptible of being made so by extraneous evidence. A "will is an instrument by which a person makes a disposition of his property to take effect after his death." A "codicil is an addition or supplement to a will; it must be executed with the same solemnities." The single feature of the paper in this case is a pretended bequest. To be valid or effective as a will, it should in itself and without the aid of other evidence refer to or contemplate in some way the death of the maker, and should show some disposition of property—use some words of actual gift then made. We find no allusion to death in the paper, and no words from which a donation actually made, or to be made, can be inferred. It is a note in form, offhand and flippant in style, and in view of the contents actually repels the idea of a last will and testament. (See *Sadler* v. *Turner,* 8 Vesey, Jr., 623; see, also, 1 Vesey, 395; also Greenleaf on Evidence, vol. 1, Secs. 287 to 291.)

If the intention of the testatrix may be ascertained not only in construing the provisions of the will, but in giving character to the paper itself (which we do not admit), by taking in view the situation of the maker, still the oral declarations of the testatrix are excluded by the law. (Civil Code, Art. 1318; *Estate of Gerraud,* 35 Cal. 340.)

The character of this paper depends upon the construction of the words, "I wish to give you." Unless they are words of gift or donation, the paper remains only a friendly note—is not a will. "The words are to be taken in their

ordinary and grammatical sense, unless," etc. (Civil Code, Art. 1324.) "A clear and distinct devise or bequest cannot be affected   *   *   *   by any other words not equally clear and distinct." (See Civil Code, Art. 1322.) In case of uncertainty, intention is ascertained from the words of the will, taking in view the circumstances under which it was made exclusive of oral declarations. (Civil Code, Art. 1318.) Strip this case of the oral declarations of testatrix, and we have simply the note, with no words of disposition, and no reference to death.

*Wm. Mathews,* for the Respondent.

Appellant objects that the paper is not testamentary, because no words are used from which a donation actually made, or to be made, can be inferred, and because it makes no reference to death.

The objection that the word "wish" is not testamentary, is answered by the following cases lately decided: *Estate of Wood,* 36 Cal. 75; *Busby* v. *Lynn,* 37 Texas, 146; in *The Goods of Marsden,* 1 Swabbey & Tristam, 542. And by the principle laid down in Jarman on Wills (1st vol. 363), and Redfield on Wills (1st vol. 174–5, ed. of 1869).

The second objection is answered by a number of authorities.

In *Outlaw* v. *Hurdle et al.* (1 Jones, N. C. Law R. 151), the following paper was declared to be a will:

"It is my wish and desire that my good friend and relative, Dr. Joseph B. Outlaw, have all my property of every description.

"DAVID OUTLAW. ·

"December 20, 1848."

In the *Succession of Ehrenberg* (21 La. Ann. 280), the following paper was held to be a will:

"Mrs. Sophie Loper is my heiress.

"G. EHRENBERG."

(See *Goods of Marsden,* 1 Swabbey & Tr. 542; *Jones* v. *Nicolay,* 2 Robertson Ecc. R. 288, and *Cook* v. *Cook,* 1 Law R. Probate and Divorce, 241.)

In *The King's Proctor* v. *Daines* (3 Haggard Ecc. R. 218), Sir John Nicholl, and in *The Goods of English* (31 Law Journal, part 3, Probate, etc., 5), Sir J. P. Wilde held a paper making no allusion to death to be testamentary.

The form of the instrument is immaterial. It may be in the form of a letter, as in *Todd's Will*, 2 Watts & Sergeant, 145, and *Maxwell* v. *Maxwell*, 3 Metcalf (Ky.) 101; of a memorandum, as in *Robnett* v. *Ashlock*, 49 Missouri, 172; of a power of attorney, as in *Cross* v. *Cross*, 8 A. & E. 714; or of a deed, as in *Hester, Exr.,* v. *Young*, 2 Kelly (Ga.) 31, and *Baxter* v. *Brown*, 41 Georgia, 214.

A part of the instrument may be adopted, and a part rejected, as in *Goods of Thomas Dunne,* a soldier (8 Jurist, N. S. 752).

"The instrument need not be testamentary in form." (1 Williams on Executors, 90.) Its testamentary character may be shown by extrinsic evidence. (Id. 92.)

By the Court, CROCKETT, J.:

The question to be determined is, whether the paper propounded by Miss Ransom, and which is entirely in the handwriting of the late Mrs. Gordon, and was written during her last illness, is entitled to probate as an olographic will. It is not denied that at the time when it was written Mrs. Gordon was of sound mind, and wrote it under the belief that her death was near at hand, as in fact it was. The point chiefly discussed by counsel is, whether the paper is or was designed to be testamentary in character. It was dated June 23, 1874, a few days before Mrs. Gordon's death, and is in these words:

"DEAR OLD NANCE: I wish to give you my watch, two shawls, and also five thousand dollars.

> "Your old friend,
> "E. A. GORDON."

On its face there is nothing to indicate that it was intended to be testamentary. The full name of the beneficiary is not mentioned, nor is there any reference to the antici-

pated death of Mrs. Gordon. Aside from the surrounding circumstances, as developed by the oral testimony, the instrument on its face simply expresses a desire, or at most an intention, on the part of Mrs. Gordon, to give to the person designated as "Dear Old Nance" the watch and shawls, together with $5000. It clearly appears, however, from the testimony, without contradiction, that Miss Ransom is the person designated as "Dear Old Nance." It is well settled in this country and in England, first, that in determining whether the instrument propounded was intended to be testamentary, reference will be had to the surrounding circumstances, and the language will be construed in the light of these circumstances. Second, that if it shall appear under all the circumstances that the instrument was intended to be testamentary, the court will give effect to the intention, if it can be done consistently with the language of the instrument; and in such cases the particular form of the instrument is immaterial. These propositions are supported by numerous authorities, among which are the following: 1 Jarman on Wills, 363; 1 Redfield on Wills, 174–5; *Outlaw* v. *Hurdle*, 1 Jones (N. C.) Law R. 151; *Succession of Ehrenberg*, 21 La. Ann. 280; *Jones* v. *Nicolay*, 2 Robertson Ecc. R. 288; *Todd's Will*, 2 Watts & Serg. 145; *Maxwell* v. *Maxwell*, 3 Metc. (Ky.) R. 100; *Robnett* v. *Ashlock*, 49 Mo. 172; 1 Williams on Exrs. 90; *Wootton* v. *Redd's Ex'r*, 12 Grattan, 205; *McGrath* v. *Reynolds*, 116 Mass. 566.

The next inquiry is, under what circumstances the paper in question was made and executed by Mrs. Gordon. It appeared in evidence that for some years Mrs. Gordon and Miss Ransom had been on terms of intimacy. Mrs. Gordon was a widow, with a large estate and without children living. She had before executed a will in due form, by which she had devised to her brother (the appellant) the whole of the estate, with the exception of several specific legacies, one of which was to Miss Ransom for $1000, and the brother was nominated as one of the executors. It further appears that after the will had been duly made and executed, Mrs. Gordon desired to make a further provision for Miss Ransom; and for that purpose drew up, wholly in

her own handwriting, and delivered to Miss Ransom, the paper propounded as a will. The Court finds that when this instrument was executed and delivered, Mrs. Gordon was of sound mind, and was cognizant of the fact that she was in her last illness, and was in expectation of death; that she was not under duress, restraint or undue influence, and delivered the paper, "intending that the same should take effect after her death;" and further, that Miss Ransom was the person designated in the instrument as "Dear Old Nance." Upon these facts the court below admitted the instrument to probate. But it has been suggested that it appears from the testimony of Miss Ransom herself, that the instrument was not intended to be testamentary, but merely as a written request to Clarke, the residuary devisee, and as indicating the desire of Mrs. Gordon (which she believed he would respect) that he would give Miss Ransom the watch and shawls and the $5000. But I think such an inference is not fairly deducible from Miss Ransom's testimony, taken as a whole. It is true she says Mrs. Gordon requested her not to exhibit the paper to Clarke until after her death; nor then unless he should refuse on her verbal request to give her the $5000 and the watch and shawls. But she also testifies that in case he refused to comply with the request, Mrs. Gordon instructed her "to give the paper to Mr. Doyle and have it effected after her death." This would seem to indicate very clearly that she did not intend it should be optional with Clarke whether Miss Ransom should receive the benefit of her bounty. But without going into further detail, it will suffice to say on this point, that in my opinion the court was justified by the evidence in holding that the instrument was intended to be testamentary. But it is urged in argument that under section 1292 of the Civil Code, and section 1970 of the Code of Civil Procedure, then in force, this instrument is inoperative to change, modify or revoke, *pro tanto*, the former will. As these two sections then stood, they were identical in legal effect, and provide that a written will cannot be revoked or altered, in whole or in part, except "by a written will or other writing of the testator declaring such revocation or alteration, and

executed with the same formalities with which a will should be executed by such testator." The instrument propounded being wholly in the handwriting of the testatrix, was executed with the requisite formality, but does not *on its face* declare that it was thereby intended to revoke or alter the former will; nor was it necessary that it should. The words "declaring such revocation or alteration," as employed in the statute, mean nothing more than that it shall appear from the provisions of the last will, that it was intended to alter or revoke the former, in whole or in part.

In my opinion the judgment and order should be affirmed, and it is so ordered.

WALLACE, C. J., dissenting:

The instrument in question is not in form a testamentary disposition. It is the mere expression of a wish that the proponent should, after the death of Mrs. Gordon, have the sum of money and the articles therein mentioned. The instrument, therefore, cannot be considered either as a will or codicil entitling it to be admitted to probate as such, unless from the circumstances attending its execution it can be held to be such, and this is conceded by my associates. But the circumstances in evidence, so far from showing that Mrs. Gordon intended the instrument as a will or codicil, affirmatively show the contrary. It appears that the purpose of Mrs. Gordon was merely to charge Clarke, as being her general devisee and legatee, with the payment of the money and delivery of the articles mentioned in the instrument. She and the proponent, at the time the instrument was prepared, discussed the probabilities as to Clarke's respecting her verbal wishes in that respect, expressed by her on previous occasions. The conclusion arrived at was that he would not do so. The instrument was then prepared and delivered to the proponent, upon her express promise that she would not exhibit it to Clarke during the lifetime of Mrs. Gordon, and that even after her death it should not be shown to Clarke, if he should prove willing to carry out the wishes of Mrs. Gordon in respect to the proponent. No significance in this connection is due to the

direction of Mrs. Gordon, that if Clarke should prove impracticable, a lawyer should be consulted, and the instrument "*effected* after her death." This would be to do nothing more than was done in *Laurencel* v. *De Boom* (48 Cal. 581), where a *trust*, under circumstances somewhat similar, was enforced upon the conscience of the general devisee of Jean Corneille De Boom. The precise purposes had in view by Mrs. Gordon in executing the instrument are thus distinctively shown, and notwithstanding the courts both in England and America have notoriously gone to extreme lengths in construing almost any form of instrument to be a will, I think that not one can be produced which, in its attendant circumstances, will support the conclusion arrived at by the court below in this case and now affirmed here.

I, therefore, dissent from the opinion and judgment of my associates, and am of opinion that the judgment rendered below should be reversed.

Mr. Justice McKINSTRY did not express an opinion.